[Cite as *State v. Haymon*, 2026-Ohio-2614.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | No. 115862 |
| v. | : | |
| REGINALD HAYMON, | : | |
| Defendant-Appellant. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 9, 2026

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-24-697778-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Megan Helton, Assistant Prosecuting Attorney, *for appellee.*

Flowers & Grube, and Louis E. Grube and Michael J. Factor, *for appellant.*

EILEEN A. GALLAGHER, J.:

{¶ 1} Reginald Haymon ("Haymon") appeals his convictions for various felony offenses and the associated prison sentence. For the following reasons, we affirm the trial court's judgment.

## I. Facts and Procedural History

{¶ 2} On December 12, 2024, Haymon was charged in a 12-count indictment alleging that he sexually assaulted S.G. between June 1, 2014 and May 31, 2015, when she was a minor, and on November 12, 2023, when she was an adult. Haymon's case proceeded to a jury trial and the jury found Haymon guilty of three counts of unlawful sexual conduct with a minor in violation of R.C. 2907.04(A), third-degree felonies; felonious assault in violation of R.C. 2903.11(A)(1), a second-degree felony; strangulation in violation of R.C. 2903.18(B)(1), a second-degree felony; strangulation in violation of R.C. 2903.18(B)(2), a third-degree felony; aggravated menacing in violation of R.C. 2903.21(A), a first-degree misdemeanor; and felonious assault in violation of R.C. 2903.11(A)(2), a second-degree felony, with firearm specifications. The jury found Haymon not guilty of the remaining four counts in the indictment.

{¶ 3} Haymon was sentenced to an aggregate of 16-20 years in prison. Specifically relevant to this appeal, the court ran the following prison sentences consecutively: eight-to-12-years for the felonious assault in violation of R.C. 2903.11(A)(2); three years for the accompanying firearm specification; and five years for one count of unlawful sexual conduct with a minor.

{¶ 4} Haymon appeals and raises the following assignments of error for our review:

> I. Trial counsel was constitutionally ineffective by failing to make a challenge for cause to juror number three, who was close personal friends with the elected prosecutor.

II.     The trial court committed plain error by permitting jurors to see a firearm not utilized in any alleged offense.

III.     The trial court committed plain error by imposing consecutive sentences that are disproportionate to the de minimus danger Haymon poses to the public.

## II. Law and Analysis

### A. Ineffective Assistance of Counsel

#### 1. Standard of Review

{¶ 5} In his first assignment of error, Haymon argues that this court should adopt and apply a "softer" standard of review for ineffective assistance of counsel than the one Ohio courts currently use.  Specifically, Haymon asks this court to apply the test from *State v. Hester*, 45 Ohio St.2d 71 (1976), rather than the currently used test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), which was adopted by the Ohio Supreme Court in *State v. Bradley*, 42 Ohio St.3d 136 (1989). Haymon additionally argues that his counsel was "constitutionally ineffective" when he "failed to seek removal for cause of [a juror who was] a close personal friend of Cuyahoga County's elected prosecutor."  According to Haymon, the *Hester* test should be used because this juror's "close personal history with the elected prosecutor takes this case out of the typical legal framework, where some reasonable possibility of a different outcome must be demonstrated."

#### a. The Current Test Under *Strickland* and *Bradley*

{¶ 6} To succeed on a claim of ineffective assistance of counsel, a defendant must establish that his or her attorney's performance was deficient and that the defendant was prejudiced by the deficient performance.  *Strickland*.  However, "a

court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance." *Id.* at 697. "[T]o show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Bradley* at 143.

### b. The *Hester* Test

{¶ 7} In *Hester*, the Ohio Supreme Court recognized "that an appellant may present for determination the claim of ineffective retained counsel" in addition to ineffective appointed counsel. *Id.* at 76. The *Hester* Court also determined that "the effectiveness of representation by both retained and appointed counsel must be gauged by the same standard." *Id.* at 79. That standard is articulated in *Hester* as follows: "Balancing the rights of the accused and of the public, we hold the test to be whether the accused, under all the circumstances, including the fact that he had retained counsel, had a fair trial and substantial justice was done." *Id.*

{¶ 8} In *State v. Lytle*, 48 Ohio St.2d 391 (1976), *vacated in part on other grounds*, 438 U.S. 910 (1978), and *State v. Calhoun*, 86 Ohio St.3d 279 (1999), the Ohio Supreme Court held that when applying the *Hester* test, "a two-step process is usually employed." *Calhoun* at 289. "First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the

defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness." *Lytle* at 396-397. This two-step process is essentially the same as the *Strickland* and *Bradley* test. *See State v. Smith*, 17 Ohio St.3d 98, 100 (1985) ("The test enunciated in *Strickland* is essentially the same as the one we adopted in *State v. Hester* . . . and *State v. Lytle* . . . ."). In other words, contrary to Haymon's argument, the *Hester* test is not an alternative to the current ineffective-assistance-of-counsel standard used by Ohio courts today.

{¶ 9} Accordingly, we must follow Ohio Supreme Court precedent and apply the same ineffective-assistance-of-counsel standard we have been applying since at least 1989 when *Bradley* was released.

### 2. Juror Challenges

{¶ 10} A fair trial requires impartial jurors. *State v. Clinton*, 2017-Ohio-9423, ¶ 88. Challenging jurors for cause is governed by R.C. 2313.17, 2945.25 and Crim.R. 24(C). Pertinent to Haymon's argument on appeal, R.C. 2313.17(B) lists "good causes for challenge to any person called as a juror . . ." and Section (9) states as follows: "That the person discloses by the person's answers that the person cannot be a fair and impartial juror or will not follow the law as given to the person by the court." Challenges under R.C. 2313.17(B)(9) are referred to as "challenges to the favor" and are within the court's discretion. *See State v. Swift*, 2014-Ohio-4041, ¶ 4 (9th Dist.), citing *Hall v. Banc One Mgmt. Corp.*, 2007-Ohio-4640, ¶ 30-33 (analyzing former R.C. 2313.42(J), which is now R.C. 2313.17(B)(9)).

{¶ 11} Furthermore, R.C. 2313.17(D) states as follows: "In addition to the causes listed in division (B) of this section, any petit juror may be challenged on suspicion of prejudice against or partiality for either party . . . or other cause that may render the juror at the time an unsuitable juror." R.C. 2945.25(B) and Crim.R. 24(C)(9) permit challenges if the prospective juror "is possessed of a state of mind evincing enmity or bias toward the defendant or the state . . . ." Additionally, R.C. 2945.25(O) and Crim.R. 24(C)(14) permit challenges if the person is "otherwise unsuitable for any other cause to serve as a juror."

### 3. Analysis

{¶ 12} On appeal, Haymon argues that "defense counsel should have lodged a challenge to Juror Number Three based upon concerns of personal affinity toward, and therefore, bias in favor of, the State's primary attorney in the County." Specifically, Haymon bases his argument on the following colloquy between juror No. 3 and the court:

> THE COURT:    So is there anyone who doesn't feel that they can be fair and impartial for any reason at this time, having heard about the case?
>
> . . .
>
> JUROR NO. 3:    Your Honor, with all due respect to yourself to this courtroom fellow jurors, I was born and raised Catholic and at John Carroll University. I don't believe in the death penalty. So if I have to cast a vote regarding that, I can't do it, just based on my faith. I'm just being honest with you.
>
> THE COURT:    Got that. This is not a death penalty case.
>
> JUROR NO. 3:    Okay, very good.

THE COURT:      You'll be okay?

JUROR NO. 3:      Okay.

. . .

THE COURT:      And do you know any lawyers?

JUROR NO. 3:      I do.

THE COURT:      Anybody who does criminal defense work or prosecutor[] work?

JUROR NO. 3:      I do.  Mike O'Malley[1] is a personal friend of mine. We wrestled at John Carroll together.

THE COURT:      The prosecutor?

JUROR NO. 3:      Correct.  He had more hair.

THE COURT:      Yeah, the guy with the good hair.  So you went to Carroll with him?

JUROR NO. 3:      Yes.

THE COURT:      Did he wrestle?

JUROR NO. 3:      He did.  He and I wrestled there.

{¶ 13} The Ohio Supreme Court has held that a "juror is permitted to serve so long as her relationship to a person in the case is distant and casual, rather than close and ongoing." *State v. Beasley*, 2018-Ohio-493, ¶ 128.  Furthermore, to satisfy the test for ineffective assistance of counsel based on the failure to question or strike a particular prospective juror because of partiality or bias, Haymon must prove that

---

[1] We take judicial notice that Michael C. O'Malley is the elected Cuyahoga County Prosecutor who was first sworn into office in January 2017 and was reelected in November 2024.   There is no indication in the record that O'Malley was personally involved in Haymon's trial.  *See*  https://www.ccprosecutor.us/who-we-are/meet-the-prosecutor/ (last visited June 24, 2026).

the juror was not "capable and willing to decide the case solely on the evidence . . . ." *Smith v. Phillips*, 455 U.S. 209, 217 (1982).

{¶ 14} Our review of the voir dire in this case shows that the court asked all jurors if they did not "feel that they can be fair and impartial" prior to Haymon's trial. Juror No. 3 replied that he would be unable to vote in favor of the death penalty due to his faith. The court assured juror No. 3 that this was not a death penalty case and asked him if he would "be okay." Juror No. 3 responded, "Okay." The court then asked juror No. 3 if he knew "[a]nybody who does criminal defense work or prosecutor[] work." Juror No. 3 related to the court that Cuyahoga County Prosecutor Michael C. O'Malley was a "personal friend" of his. Juror No. 3 did not mention anything about O'Malley when asked if he could be fair and impartial.

{¶ 15} As stated previously, when reviewing a claim for ineffective assistance of counsel, we apply a two-pronged test. First, whether counsel's performance was deficient, and second, whether the defendant was prejudiced by the deficient performance. Focusing on the second prong regarding prejudice, Haymon argues that juror No. 3's "close personal history with the elected prosecutor takes this case out of the typical legal framework, where some reasonable possibility of a different outcome must be demonstrated."[2] While Haymon concedes that there is no

---

[2] We note that Haymon's first assignment of error alleges juror No. 3 and O'Malley were "close personal friends." However, juror No. 3 stated in open court that O'Malley was a "personal friend" of his. Not to put too fine a point on it, but *Beasley,* cited above, draws a distinction between "distant and casual" relationships and "close and ongoing" relationships. It is noteworthy that juror No. 3 did not say that O'Malley was a *close* personal friend of his.

evidence of how juror No. 3 deliberated, thus there is no evidence of actual bias, he nonetheless argues that "[s]uch a lack of confidence in the outcome is all that is required to demonstrate prejudice under *Strickland*." The law, however, says otherwise.

{¶ 16} In *State v. Rogers*, 2025-Ohio-4794, ¶ 28, the Ohio Supreme Court noted that "the United States Supreme Court has never held that *Strickland* prejudice should be presumed based on the presence of a biased juror . . . ." Quite the opposite, the Ohio Supreme Court held the following: "When a defendant bases an ineffective-assistance claim on an assertion that his counsel allowed the impanelment of a biased juror, the defendant '*must* show that the juror was *actually biased* against him.'" (Emphasis in original.) *State v. Mundt*, 2007-Ohio-4836, ¶ 67, quoting *Miller v. Francis*, 269 F.3d 609, 616 (6th Cir. 2001). The *Rogers* Court reasoned that "prospective jurors are presumed impartial, so it is incumbent on the party challenging the empanelment of a juror to overcome that presumption to establish bias." *Id.* at ¶ 33.

> The actual-bias standard for presuming prejudice necessarily means that when the voir dire record demonstrates only a possibility or a potential that a juror was biased, prejudice may not be presumed. Thus, when the voir dire transcript indicates statements that suggest potential bias but fall short of demonstrating actual bias, and counsel neglected to follow up on such statements, prejudice cannot be presumed.

*Id.* at ¶ 37.

{¶ 17} In *State v. Cooper,* 2006-Ohio-869, ¶ 14 (11th Dist.), the court was presented with a factual situation similar to the one in this case, except that in

*Cooper* not one, but three, prospective jurors "were found to be acquaintances of the prosecutor." In fact, one of these jurors "had gone to school with the prosecutor for about eleven years." *Id.* The court concluded that "defense counsel is not required to exercise . . . challenges to remove potential jurors merely because they are the casual acquaintance of the prosecutor, particularly where, as in the present case, there is no indication of bias as a result of the acquaintance." *Id.* at ¶ 17.

{¶ 18} In *State v. Courie*, 2015-Ohio-2894, ¶ 15 (11th Dist.), the court was presented with the following facts:

> During voir dire, [a potential juror] stated he and . . . the Ashtabula County Prosecutor are good friends, and . . . their daughters are college roommates. [This potential juror] and [the Ashtabula County Prosecutor] serve together on a board, and exchange weekly emails and communications regarding the board's business. Nevertheless, he stated he could be fair and make his decisions based on the law and evidence. This case was not tried by the [the Ashtabula County Prosecutor] himself, but by [an] Assistant Prosecutor . . . .

{¶ 19} Courie's counsel challenged this potential juror for cause, and the court denied the challenge. *Id.* Courie appealed, and the 11th District Court of Appeals affirmed.

> In this case, . . . Courie contends the close personal relationship between [the potential juror] and . . . the county prosecutor rendered the former suspect as a juror. We respectfully disagree. First, [the Ashtabula County Prosecutor] did not appear in this case, except through his assistant . . . ." There is nothing in the record indicating [the potential juror] knows [the assistant prosecutor]. Further, there is nothing in the record indicating [the potential juror's] connection with [the Ashtabula County Prosecutor] has anything to do with the latter's office. The record indicates it is personal and related to the board on which they serve together.

*Id.* at ¶ 27.

{¶ 20} Upon review, we conclude that Haymon cannot establish either prong of the *Strickland* test nor can he demonstrate that juror No. 3 was actually biased against him. The record reflects that juror No. 3 informed the court he could not be impartial in a death penalty case, which has no bearing here. Juror No. 3 also disclosed that he knew the elected prosecutor but did not indicate that this would affect his ability to decide the case based solely on the evidence presented. Simply put, there is no evidence that Haymon's "counsel's representation fell below an objective standard of reasonableness," there is no presumption of prejudice in this case and there is no evidence that juror No. 3 was actually biased in favor of the prosecution.

{¶ 21} Accordingly, Haymon's first assignment of error is overruled.

## B. Admission of Evidence

### 1. The Photograph at Issue

{¶ 22} In his second assignment of error, Haymon argues that showing the jury a photograph of two handguns he owned, when only one of the guns was used in the indicted offenses, was prejudicial error. According to the record, the photograph at issue "was a still frame image from body camera footage depicting the two firearms [Haymon] forfeited during the pendency of this case." The two handguns, one black and the other silver and black, are resting in a hard pistol carrying case. Specifically, the following colloquy took place during S.G.'s testimony:

PROSECUTOR: You describe at some point [Haymon] went and got a gun. Are you aware — were you aware at that time that there were firearms in the house?

S.G.: Yes.

PROSECUTOR: How many?

S.G.: I knew him to have two.

PROSECUTOR: Would you recognize a photo of the firearm if I showed you?

S.G.: Yes, I would.

. . .

PROSECUTOR: I'm handing you what has been marked as State's Exhibit 47. Do you see the guns depicted in that photo?

S.G.: Yes, I do.

PROSECUTOR: Do you recognize these as the firearms that were at the house?

S.G.: Yes, I do.

PROSECUTOR: Whose firearm[s] were these?

S.G.: [Haymon]'s.

PROSECUTOR: Do you recall what firearms he retrieved on that day?

S.G.: Yes, it was the all black gun in the picture.

PROSECUTOR: Okay. So what happened when he gets his gun?

S.G.: He goes and gets it, and when I see him with the gun, I curl up into a ball on the kitchen floor, and I just cover my head. And I just I wait until like — then I heard the gunshot. And then I opened my eyes, and I was still alive.

## 2. Standard of Review

{¶ 23} Defense counsel did not object to the photograph's introduction into evidence at trial, therefore, we review this argument for plain error. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). "To prevail under a plain-error analysis, the appellant bears the burden of demonstrating, but for the error, the outcome of the trial court proceeding would have been different." *State v. Clark*, 2026-Ohio-1286, ¶ 7 (8th Dist.). Additionally, the Ohio Supreme Court has long held that "[n]otice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 97 (1978).

## 3. Law

{¶ 24} Generally, relevant evidence is admissible at trial. Evid.R. 402. Relevant evidence "means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. However, pursuant to Evid.R. 403(A), relevant evidence "is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Additionally, pursuant to Evid.R. 403(B), relevant evidence "may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence." Furthermore, pursuant to Evid.R. 404(B)(1), "[e]vidence of any other crime, wrong,

or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."

{¶ 25} On appeal, Haymon argues that the second gun in the photograph was inadmissible "other weapons evidence," which is prohibited pursuant to Evid.R. 404(B). Haymon further argues that this evidence was inadmissible under Evid.R. 403(A), because the "unfair prejudice from this evidence far outweighs its utility given the other evidence the State could and did use to demonstrate Haymon had and fired a weapon."

{¶ 26} The State, on the other hand, argues that the photograph does not amount to other acts evidence under Evid.R. 404(B). According to the State, Haymon "stated he was a lawful gun owner, as he had his CCW, and that he used a gun that day. Therefore, lawfully possessing another firearm cannot be considered an 'other act' or 'bad act' under Evid.R. 404(B)."[3] The State further argues that, even if the photograph was inadmissible, this does not amount to plain error because "in light of the overwhelming testimony regarding the November 12, 2023 incident that the introduction of" the photograph did not affect the outcome of trial.

{¶ 27} In *State v. Thomas*, 2017-Ohio-8011, the Ohio Supreme Court explained that other weapons evidence is "irrelevant evidence of weapons unrelated to the charges" at issue. *Id.* at ¶ 36. In *Thomas*, the victim died "from blood loss caused by a stab wound to her neck that severed her right carotid artery and right

---

[3] "CCW" is neither defined nor explained in Haymon's trial transcript or any of the appellate briefing.

jugular vein." *Id.* at ¶ 13. The victim's autopsy revealed that "the stab wounds . . . were caused by a single-edged knife with a blunt edge of 1/16th of an inch." *Id.* at ¶ 14. The murder weapon in *Thomas* was never recovered. *Id.* at ¶ 46.

{¶ 28} Ultimately, police arrested Thomas for the murder in question and seized five knives from his residence and his ex-girlfriend's residence. *Id.* at ¶ 25. The State presented these five knives to the jury at Thomas' trial and described them as "full Rambo combat knives." *Id.* at ¶ 48. Again, it was undisputed that "none of these knives had anything to do with [the victim's] murder." *Id.*

{¶ 29} The *Thomas* Court found that "the trial court committed prejudicial error by admitting evidence of five knives that the state knew were not used in connection with [the victim's] murder . . . with the intent to have the jury infer that Thomas is a dangerous person of violent character." *Id.* at ¶ 45. The court further concluded that "[t]his evidence was not only inadmissible but also highly prejudicial, and there is a reasonable probability that trial court's error in admitting it affected the outcome of the trial." *Id.* at ¶ 48.

### 4. Analysis

{¶ 30} Upon review, we find Haymon's case to be different than *Thomas*, because here, one of the guns in the photograph was used in the offenses with which Haymon was charged. In this case, the evidence in question is a photograph of two guns in one carrying case that belonged to Haymon, and S.G. identified one of the guns as the gun Haymon brandished and fired on November 12, 2023.

Additionally, Haymon testified that he brandished a gun and it fired on November 12, 2023, when he was in the kitchen of his house with S.G.

> So I'm thinking I have my CCW and everything. I'm thinking that, okay, if I tell her that my gun is on me, maybe she won't try to jump on me, tap on me anymore, or do any of that.
>
> . . .
>
> So I come out and do this, I'm like, "I have my gun on me."
>
> I lift my shirt up, I show her.
>
> . . .
>
> And I smacked myself like that. I hit my trigger and I almost shot me in the foot. If anyone know about a hairline trigger, know if you tap it like this, that it would go off. It went off into the ground.

{¶ 31} We find this case to be more similar to *State v. Graham*, 2020-Ohio-6700. In *Graham*, one of the victims was fatally shot in the chest during a planned robbery. *Id.* at ¶ 2. The two surviving victims and three codefendants testified against Graham in his aggravated murder trial. *Id.* On appeal, Graham challenged the admission at trial of "a photograph of Graham holding two handguns" as being in violation of Evid.R. 404(B). *Id.* at ¶ 64. Graham failed to object to the admission of this photograph at trial and waived all but plain error. *Id.*

{¶ 32} The *Graham* Court stated that the proper analysis to review the admissibility of this photograph was found in *State v. Williams*, 2012-Ohio-5695, ¶ 20:

> The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. The next step is to consider whether evidence of the other

crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. *See* Evid.R 403.

{¶ 33} In *Graham*, the court held that the two guns Graham was holding in the photograph "may have been the two handguns used in the crimes" at issue. *Id.* at ¶ 82. The court concluded "that the photo had some relevance and satisfies the first part of the *Williams* test." *Id.* at ¶ 83.

{¶ 34} As to the second prong of the *Williams* test, the *Graham* Court chose not to follow *Thomas*. "But unlike in *Thomas*, in this case, the state sought to prove that the handguns in the photo were the same handguns used during the robbery and murder. Thus, Graham's reliance on *Thomas* is misplaced." *Id.*, 2020-Ohio-6700 at ¶ 86. Nonetheless, the *Graham* Court found that the photograph "was introduced to suggest that Graham has a propensity for gun violence and to imply that he acted in conformity with that character on the day of the crimes at issue. We hold that the photo fails the second part of the *Williams* test." *Id.* at ¶ 90.

{¶ 35} The *Graham* Court further concluded that "the photo fails the third part of the *Williams* test, because the probative value of the photo was substantially outweighed by the danger of unfair prejudice." *Id.* at ¶ 91.

{¶ 36} After finding that the photograph was improperly admitted at Graham's trial, the court concluded that "Graham cannot meet his burden to prove that . . . the introduction of the photo prejudiced him by affecting the outcome of the

trial, in light of the remaining evidence of Graham's guilt." *Id.* at ¶ 93. In other words, the court found harmless error and affirmed Graham's convictions. *Id.* at ¶ 217.

{¶ 37} In applying the three-part *Williams* test to this case, we find the following. First, the photograph is relevant because S.G. identified the all-black gun as the gun Haymon used in the offenses at issue.

{¶ 38} Second, the State argues that "the fact that [Haymon] had access to firearms and used a firearm to shoot at [S.G.] is direct evidence of the [f]elonious [a]ssault." We agree with the State that the all-black gun that S.G. testified Haymon possessed, brandished and fired on November 12, 2023, is direct evidence of the offenses alleged in this case. Additionally, Haymon testified to legally owning a gun and brandishing it that day. Haymon also testified that this gun fired on the day in question.

{¶ 39} However, we disagree with the State concerning the second gun in the photograph — namely the black and silver gun that has no apparent connection to this case. There was simply no legitimate reason to show the jury a picture of two guns when Haymon used only one. In fact, a careful reading of the State's appellate brief in this case reveals that it offers no legitimate purpose to show a picture of two guns rather than one gun. Therefore, the photograph of the irrelevant gun was necessarily used to show Haymon's character and "activity in conformity therewith" under the *Williams* test.

{¶ 40} Third, similar to *Graham*, we find that the photograph was more prejudicial than probative. The picture was probative because it showed the gun Haymon admitted to using in the offenses at issue. However, it was more prejudicial than probative because it unnecessarily showed more than one gun for the purpose of showing Haymon's bad character. Upon review, we find that the photograph was improperly admitted at Haymon's trial because it fails the second and third prongs of the *Williams* test.

{¶ 41} Again, because Haymon did not object to this issue at trial, we turn to whether the admission of this evidence amounted to plain error. Upon review, we find that Haymon failed to show that the photograph prejudicially affected the outcome of trial. S.G.'s testimony that Haymon possessed, brandished and fired a gun that day, coupled with Haymon's admission that he possessed and brandished a gun that fired that day, is more than enough to convict Haymon of felonious assault by means of a deadly weapon, with firearm specifications. Furthermore, S.G. testified in detail about the allegations against Haymon, and the jury acquitted him of some of the offenses and convicted him of some of the offenses. *See, e.g., State v. Middlesworth*, 2006-Ohio-12, ¶ 6 (9th Dist.) ("Because the jury convicted [the defendant] on some counts . . . but acquitted him on . . . other counts, we reasonably conclude that the jury was able to distinguish the credible testimony from the incredible and decide accordingly."). Simply put, the jury believed S.G.'s testimony rather than Haymon's testimony regarding the majority of the State's allegations in this case.

{¶ 42} Accordingly, we find no plain error in the admission of the photograph, and Haymon's second assignment of error is overruled.

{¶ 43} It is, however, inexplicable as to why the State introduced the photograph, at all. They were in possession of the firearm at issue but chose not to present it as an exhibit at trial. According to the assistant prosecuting attorney who argued the case before this court and, admittedly, was trial counsel for the State, "they" did not want to upset the victim/witness by presenting her with the firearm for identification. It is a nonsensical explanation although, again, we find it to be harmless error.

### C. Consecutive Prison Sentences

{¶ 44} Pursuant to R.C. 2953.08(G)(2), an appellate court's standard when reviewing felony sentences is not whether the trial court abused its discretion. Rather, if this court "clearly and convincingly" finds that 1) "the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20" or 2) "the sentence is otherwise contrary to law," then we may conclude that the court erred in sentencing. *Id. See also State v. Marcum*, 2016-Ohio-1002 (explaining R.C. 2953.08(G)(2)'s standard of review for felony sentencing).

{¶ 45} "[T]o impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry . . . ." *State v. Bonnell*, 2014-Ohio-3177, ¶ 37. Under R.C. 2929.14(C)(4), the court must find consecutive

sentences are "necessary to protect the public from future crime or to punish the offender"; "not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public"; and at least one of the following three factors:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction . . . or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offenders conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 46} Our review of Haymon's sentencing hearing transcript shows that the court ordered consecutive sentences after finding that they were "necessary to punish [Haymon] for [his] course of conduct here. A 16-year base count for this 10-year string of behavior is not disproportionate to the seriousness of [his] conduct and to the danger that [he] pose[s] to [S.G.], a member of the public." The court further found that, under R.C. 2929.14(C)(4)(b), "the harm caused by the multiple offenses [was] so great or unusual that no single prison terms for any of the offenses committed as part of the course of conduct adequately reflects the seriousness of [his] conduct."

{¶ 47} On appeal, Haymon argues that, under R.C. 2929.14(C)(4), he "presents no real danger to the public" and, therefore, consecutive sentences are

"disproportionate to any such risk in this case." Haymon argues that the court's finding that he poses a danger to S.G. does not demonstrate that he poses a danger to the public.

{¶ 48} In *State v. Banks*, 2023-Ohio-4655, ¶ 14 (8th Dist.), this court explained that the proportionality finding in R.C. 2929.14(C)(4) is two-pronged. "While a word-for-word recitation of the language of the statute is not necessary, the proportionality finding is stated as a conjunctive phrase and the trial court is required to consider the proportionality of the sentence regarding both the seriousness of the offender's conduct *and* the danger the offender poses to the public." (Emphasis in original.) *Id.* In *Banks*, this court found that the trial court failed to make the second proportionality finding and concluded that we were "unable to discern that the trial court engaged in the correct analysis . . . ." *Id.* at ¶ 15. Our review of *Banks* shows that the trial court failed to even mention the second proportionality finding at all.

{¶ 49} In this case, the court found that consecutive sentences were "not disproportionate to . . . the danger that [Haymon] pose[s] to [S.G.], a member of the public." Contrary to Haymon's arguments, the trial court did not omit this finding. Rather, it made the finding without using a verbatim recitation of the statute. Upon review, we find that this is not deficient because it demonstrates that the court considered this criteria, and we are able to discern that the court engaged in the correct analysis.

{¶ 50} Furthermore, the trial court's finding that consecutive sentences are not disproportionate to the danger Haymon poses to the public is supported by the evidence in the record. Specifically, the court found that: "You groomed this woman from a very sensitive, young age who was not just an impressionable, young person but an impressionable, young person without the benefit of strong family ties. And you continued to use her for your benefit throughout her young life, and as such you deserve consecutive time." *See State v. Jackson*, 2015-Ohio-1023, ¶ 12 (8th Dist.) (affirming consecutive sentences because the offender posed a danger to the public when the evidence showed he "groomed and preyed on his own biological daughter for his own sexual gratification over a very extended period of time . . ."); *State v. Mitchell*, 2017-Ohio-6888, ¶ 12-13 (8th Dist.) (affirming consecutive sentences because the offender posed a danger to the public when the evidence showed he took "advantage of his position of spiritual authority and the victim's faith in God, [and] manipulated and groomed the victim for his own sexual gratification").

{¶ 51} Accordingly, Haymon's third assignment of error is overruled.

{¶ 52} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, JUDGE

MICHAEL JOHN RYAN, P.J., CONCURS;
KATHLEEN ANN KEOUGH, J., CONCURS IN JUDGMENT ONLY